Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5170 | **DATE** | August 6, 2002 |
| **CASE TITLE** | Blackwell v. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for Summary Judgment (doc. #13-1);
Commissioner's Motion for Summary Judgment (doc. #14-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for summary judgment (#13-1) is **DENIED**, and the Commissioner's motion for summary judgment (#14-1) is **GRANTED**. All pending dates and motions are terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | AUG - 8 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 17 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| JHC | courtroom deputy's initials | 02 AUG -7 PM 9:41 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

AUG 8 2002

BARBARA BLACKWELL,
    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner
of Social Security,
    Defendant.

CASE NO. 01 C 5170

JUDGE WILLIAM J. HIBBLER

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Blackwell ("Plaintiff") seeks judicial review of a final administrative decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff supplemental security income ("SSI") benefits under the Social Security Act ("SSA"), 42 U.S.C. §§ 1602 and 1614(a)(3)(A), for the closed period from March 2, 1984 to March, 1986. Plaintiff claims to have been disabled during that period due to pulmonary sarcoidosis.[1] However, the Commissioner concluded that although Plaintiff suffered from a severe impairment, the medical evidence did not establish the requisite duration to meet or equal the listings. Currently pending before this Court are the parties' cross-motions for summary judgment. For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment, and grants the Commissioner's motion for summary judgment.

### BACKGROUND

*A. Procedural History*

Plaintiff filed an application for SSI benefits on March 2, 1984, which was denied without

---

[1]Sarcoidosis is defined as a chronic, progressive, systemic granulomatous reticulosis of unknown etiology, characterized by hard tubercles (g.v.) in almost any organ or tissue, including the skin, lungs, lymph nodes, liver, spleen, eyes, and small bones of the hands and feet. . . . . The acute form has an abrupt onset and a high spontaneous remission rate, whereas the chronic form, insidious in onset, is progressive. *Dorland's Illustrated Medical Dictionary* (29th Ed. 2000), at 1599.



further appeal by Plaintiff. Several years later, though, Plaintiff was notified that she had been identified as a class member in *Johnson et al. v. Sullivan*, No. 83 C 4110 (N.D. Ill. April 3, 1991), and, as such, was entitled to further review of the administrative denial of her March 1984 application for benefits. (R. 17). But before review of the first application could be undertaken, in January 1992, Plaintiff filed a second application, seeking disability insurance benefits ("DIB") and SSI. That application was also initially denied, but upon reconsideration, Plaintiff was found disabled with an onset date of January 28, 1992. (R. 18).

Plaintiff then amended her onset date to October 1, 1990, but it was determined that the medical evidence did not support an earlier onset date. Plaintiff appealed that decision, requesting a hearing before an Administrative Law Judge ("ALJ"). In his hearing decision, ALJ Wienman considered only the issue of whether Plaintiff was disabled commencing October 1, 1990, but failed to also address her status during the closed period from March 2, 1984 to March 1986 pursuant to the *Johnson* court order. Consequently, the Appeals Council remanded the case for another hearing. (R. 18). On March 11, 1999, a hearing was conducted before ALJ Drucker to determine if Plaintiff was disabled from March 2, 1984 to March 1986. (R. 18). He found that she was not and thus denied her SSI application. (R. 24). On May 7, 2001, the Appeals Counsel denied Plaintiff's Request for Review; consequently, ALJ Drucker's decision stands as the final determination of the Commissioner. (R. 6-7).

## B. *Statement of Facts*

### *1. Evidence Presented at Plaintiff's March 1999 Hearing*

Plaintiff testified that she was born on November 26, 1948, and in terms of education, she had completed the eighth grade as well as two years of trade school. (R. 59). Plaintiff worked at Spiegel's Department Store as an order filler until she was laid off in approximately 1974. (R. 61). In that position, Plaintiff remained on her feet all day and regularly lifted 30-40 lbs. (*Id.*).

According to Dr. Lawrence Perlman, a medical expert who examined Plaintiff's medical

-2-

records and testified at the hearing, Plaintiff suffers from pulmonary sarcoidosis, which is an infection of low grade virulence that can invade most of the organ systems of the body, although it frequently affects the pulmonary functions. (R. 65). The most common treatment for the disease is steroid therapy. (*Id.*). Indeed, from 1983 to 1987, Plaintiff took the steroid Prednisone for her condition. (R. 73). And, during the relevant two-year period in question (from March 2, 1984 to March 1986), Plaintiff was hospitalized on three occasions in 1984 for breathing problems stemming from pulmonary sarcoidosis: (1) February 10 to February 18; (2) March 5 to March 15; and (3) May 29 to June 5. (R. 62, 71).

Nevertheless, Dr. Perlman opined that Plaintiff did not meet the durational requirement for the relevant listing – Medical Listing 3.03 (Asthma) – because her hospitalizations spanned only a five-month period, as opposed to the requisite one-year period. (R. 77). Dr. Perlman did find, though, that Plaintiff could perform only light work in an environment with limited dust and fumes so as to avoid exacerbating her cough and shortness of breath, (R. 68, 70), and that in light of the restriction imposed, Plaintiff could not do any of her past work. (R. 77). However, the vocational expert testified that jobs meeting those criteria, such as an inspector, hand packager or cashier, were readily available in the economy. (R. 77).

## 2. *The ALJ's Decision*

On April 29, 1999, ALJ Drucker issued his decision, finding the medical evidence established that Plaintiff suffered from severe pulmonary sarcoidosis, but did not have an impairment or combination of impairments sufficient to meet or equal a "listed" impairment. (R. 23). In reaching that conclusion, the ALJ relied primarily on the testimony of Dr. Perlman. (R. 21). The ALJ noted that although the record revealed Plaintiff had been hospitalized three times over a five month period in 1984 for pulmonary sarcoidosis, there was no evidence of any other exacerbations during the closed two year period under review. (R. 21-22). Consequently, the ALJ explained, "even if the severity of [her] condition was of a disabling level during this 5-month period, there is no evidence

-3-

to indicate that it remained at this level of severity for a period of 12 continuous months." (R. 21). Thus, he concluded, Listing 3.03, which requires that a "disabling" condition last for 12 continuous months, had not been satisfied. (R. 22). Moreover, the ALJ determined, Plaintiff was indeed unable to engage in past relevant work, but she nonetheless maintained the residual functional capacity to perform the full range of light work. (R. 22). Accordingly, ALJ Drucker found Plaintiff was not under a "disability" at any time from March 2, 1984, the date she applied for SSI benefits, to March 1986, the date she returned to work. (R. 24).

## STANDARD OF REVIEW

Reversal of the Commissioner's decision is warranted only if the evidence *compels* such a finding, not merely because the evidence supports a contrary decision. *See, e.g., INS v. Elias-Zacarias*, 112 S. Ct. 812, 815 n.1 (1992). Pursuant to 42 U.S.C. § 405(g), the ALJ's factual findings are conclusive if supported by substantial evidence. *See Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citation omitted). Furthermore, although the Court may review the entire record, it may not reconsider facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Williams v. Apfel*, 179 F.3d 1066, 1072 (7th Cir. 1999). Thus, in analyzing the ALJ's finding that Plaintiff was not disabled, the Court focuses on whether the record contains substantial evidence to support the ALJ's decision, not whether an alternate decision could be reached. *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

## ANALYSIS

The ALJ followed the established five-step sequential inquiry for evaluating Plaintiff's claim of disability. *See* 20 CFR § 416.920(b)-(f). Five questions are posed in sequence until a question is answered affirmatively or negatively in such a way that directs a finding of disability or non-disability. *See Schumacher v. Barnhart*, 196 F. Supp. 2d 716, 720 (N.D. Ill. 2002). The claimant bears

the burden of proof at steps one through four; at step five, the burden shifts to the Commissioner. *Henderson*, 179 F.3d at 512, n.3.

Steps one and two are not in dispute here. At step one, the claimant's having substantial gainful employment will preclude a finding of disability. 20 CFR §416.920(b). In this case, the ALJ found that Plaintiff was not engaged in substantial gainful activity between March 2, 1984 and March 1986, the period under review. (R. 23). Step two then focuses on the severity of a claimant's impairment. 20 CFR § 416.920(c). The ALJ found Plaintiff satisfied that requirement since she suffers from severe pulmonary sarcoidosis. (R. 23). However, Plaintiff disputes the ALJ's finding on step three that her "impairment(s) [did not] meet or equal a listed impairment in Appendix 1." 20 CFR § 416.920(d).

Section 3.03B of the Listing of Impairments, 20 C.F.R., Part 404, Subpart P, Appendix 1 provides the criteria for a per se asthma disability:

> Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

Plaintiff contends that her impairment, pulmonary sarcoidosis, meets or equals the listing for asthma because she had the baseline number of attacks. The record does reflect that Plaintiff was hospitalized for longer than 24 hours on three different occasions from February to June 1984. (R. 62, 71). And because each hospitalization was overnight, it counts as two attacks, and therefore meets the minimum requisite number of six attacks. However, at her hearing, Dr. Perlman opined and the ALJ ultimately agreed that Plaintiff's impairment did not satisfy the durational requirement of Listing 3.03B since "an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks," and the medical evidence showed attacks spanning a period of only five months.

Plaintiff nonetheless contends that she was as disabled as someone who suffered continuous

attacks throughout the 12-month period because she continued to experience other companion ailments, such as pain and difficulty breathing. Plaintiff reasons that she meets the listing here even though she did not suffer additional attacks during the remaining seven months of the evaluation period because she was still functionally affected by pulmonary sarcoidosis. However, Plaintiff's argument ignores the express language of the listing which states that the frequency of attacks must be measured over a period of 12 continuous months. As section 3.00C, which defines attacks for purposes of Listing 3.03B, explains, "[w]hen a respiratory impairment is episodic in nature, as can occur with exacerbations of asthma. . . the frequency and intensity of episodes that occur despite prescribed treatment are often the major criteria for determining the level of impairment." In that the medical evidence establishes Plaintiff suffered attacks for only five months, it appears that the Prednisone treatment was successful in preventing further episodes. Perhaps Plaintiff did, in fact, continue to experience pain and difficulty breathing over the remaining 7 month evaluation period, but absent some evidence of further *attacks* in spite of treatment, her pulmonary sarcoidosis simply does not meet or equal Listing 3.03B. *See Sullivan v. Zebley* 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original). *See also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (concluding that the claimant's asthma did not approach the level of severity required by the listings).

Plaintiff also erroneously contends that "the 12-month [durational] requirement implies not only that an impairment has lasted 12 months, but also that is [sic] can be expected to last 12 months, whether is [sic] ultimately does." (Pl.'s Reply Mem. in Resp. To Def.'s Mot. for Summ. J. at p. 2). However, as the Supreme Court recently clarified in *Barnhart v. Walton*, 122 S.Ct. 1265 (2002), the Social Security Administration "reads the term 'expected to last' as applicable only when the 'inability' has *not yet* lasted 12 months." *Id.* at 1268 (emphasis in original). At the time the ALJ reviewed Plaintiff's claim, the 12-month evaluation period had already passed, and therefore he was able to definitively determine if her impairment satisfied the durational requirement. Thus, there is

no need to resort to hypothesizing about what could have happened, since, as the Court has already stated above, what actually happened is that the impairment did not last for 12 months. *See id.* at 1270-71.

Although Plaintiff failed to satisfy step three, she can still prevail on her claim of disability at steps four and five. Concerning step four, the ALJ found that Plaintiff's impairments prevented her from doing her "past relevant work," 20 CFR § 416.920(e), because, as the vocational expert testified, her pulmonary sarcoidosis limited her residual functional capacity to light work only. (R. 21). Nevertheless, at step five, where the burden shifted to the Commissioner to identify jobs existing in the economy that Plaintiff, after considering her residual functional capacity, age, education and past work experience, could perform, 20 CFR § 416.920(f), the ALJ found that pursuant to Medical-Vocational Rule 202.17, there were a significant number of light work jobs available for a younger person with limited education and a history of unskilled labor. (R. 77). Plaintiff, therefore, failed to establish that she was disabled from March 2, 1984 to March 1986.

## CONCLUSION

Because the record contains substantial evidence to support the ALJ's determination that Plaintiff was not disabled, her motion for summary judgment is denied, the Commissioner's motion for summary judgment is granted, and the decision finding Plaintiff not disabled is affirmed.

IT IS SO ORDERED.

_____
WILLIAM J. HIBBLER, DISTRICT JUDGE

DATED: August 6, 2002